UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,   CASE NO. 00-6270-CR-GRAHAM

    Plaintiff,

vs.

MARK GOLDBERG,

    Defendant.
_____/



### RESPONSE BY DR. DAVID B. ROSS

COMES NOW the Defendant, **MARK GOLDBERG**, by and through his undersigned attorney and respectfully files this Response by Dr. David B. Ross, to the letter written by Michael B. Nelson D.O. of the Bureau of Prisons.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by **VIA-U.S. MAIL DELIVERY** to Assistant United States Attorney Annie Martinez, located at, 99 Northeast 4th Street, Miami, Florida 33132, and to Assistant United States Attorney, Debra J. Stuart, located at, 505 South Second Street, Suite 200, Fort Pierce, Florida 34950 and to the Clerk of the Court and the Honorable Judge Donald L. Graham, both located at, United States District Court, North Miami Avenue, Miami Florida 33128, this 23rd day of July, 2002.

                                                  _____
                                                  RUSSELL J. WILLIAMS, ESQ.
                                                  400 Southeast Sixth Street
                                                  Fort Lauderdale, Fl 33301
                                                  (954) 525-2889
                                                  Florida Bar #727751

RJW:lw



# DAVID B. ROSS, MD., P.A.

July 10, 2002

Debra J. Stuart
Assistant United States Attorney
Southern District ot Florida
505 South Second Street, Suite 200
Fort Pierce, Florida 34950

   Re: U.S. v. Mark Goldberg
     Case No. 00-6270-CR Graham

Dear Ms. Stuart

Mark Goldberg sent me the letter you received from Michael B. Nelson, D.C. and asked me to comment. My thoughts are enclosed herein. Despite Dr. Nelson's obvious and justly derived pride in the Federal Bureau of Prison's (FBOP) medical services, I must disagree with his conclusions regarding Mr. Goldberg. A review of some relevant data will illustrate my concerns.

Dr. Nelson's attachment provides the following data. The FBOP provides medical services of all types for approximately 20,000 of 130,000 inmates nationwide. As mentioned, it routinely provides services to the more common conditions (hypertension, diabetes, thyroid disorders, heart attack, stroke, seizure disorders). I have little doubt that the services for these entities is of an excellent quality. The data however does not apply to the rare condition of RSD and even less so to the specific case of Mr. Goldberg.

Documented RSD is a relatively rare condition. The advanced cases (such as Mr. Goldberg suffers) number in the tens of thousands nationwide. Although exact statistics are not available, an estimated prevalence of documented stage II to III RSD numbers far less than 1 of 1000 in the general population. (References upon request). Extrapolating from that statistic, I would be extremely surprised if there are more than 100 or so inmates with a clear diagnosed RSD II or III in the entire nation. In any specific prison's population, there would probably at most one or two.

When one then considers Mr. Goldberg's additional medical conditions (heart disease, hypertension and recent colon surgery), the viable therapeutic options available to safely treat his complicated mixture of health problems diminishes. The number of prison inmates that would fit his complicated medical profile would be projected to be a few dozen people at most (nationwide). Mr. Goldberg's specific case has already proven difficult to successfully treat (before these internment issue arose). He had seen multiple physicians without relief before he came to see me. As I mentioned, it was serendipity that I managed to find a successful treatment on my first attempt. This is the exception with RSD rather than the rule.

With all deference to the BOP, it is extremely unlikely that they have the requisite experience with the

---

THE MEDICAL SERVICES BLDG  ◆  4101 NW 4ᵀᴴ Street, Suite 208, Plantation, FL 33317  ◆  954-587-4300  ◆  Fax 954-587-4018

Mark Goldberg
page 2

uncommon amalgam of problems facing Mr. Goldberg over the next several years. This statement is in no way derogatory; it simply reflects the complexities of his situation. With sub-optimal care, it is medically probable that his condition would exacerbate and then progress. (Studies show that upto 70% of all patients suffer a spread of their pain and autonomic/dystrophic symptoms, especially in more advanced cases). Mr. Goldberg's medical well-being is at risk, and this risk will inevitably and substantially increase if he is imprisoned.

I hope this addendum to my court testimony assists all parties in the difficult decision demanded in this circumstance. I will be happy to provide literature references concerning any of my statements.

Sincerely yours,

*[signature]*

David B. Ross, M.D.
Cc: Mark Goldberg

# DAVID B. ROSS, MD., P.A.

July 10, 2002

Debra J. Stuart
Assistant United States Attorney
Southern District of Florida
505 South Second Street, Suite 200
Fort Pierce, Florida 34950

      Re: U.S. v. Mark Goldberg
          Case No. 00-6270-CR Graham

Dear Ms. Stuart

Mark Goldberg sent me the letter you received from Michael B. Nelson, D.C. and asked me to comment. My thoughts are enclosed herein. Despite Dr. Nelson's obvious and justly derived pride in the Federal Bureau of Prison's (FBOP) medical services, I must disagree with his conclusions regarding Mr. Goldberg. A review of some relevant data will illustrate my concerns.

Dr. Nelson's attachment provides the following data. The FBOP provides medical services of all types for approximately 20,000 of 130,000 inmates nationwide. As mentioned, it routinely provides services to the more common conditions (hypertension, diabetes, thyroid disorders, heart attack, stroke, seizure disorders). I have little doubt that the services for these entities is of an excellent quality. The data however does not apply to the rare condition of RSD and even less so to the specific case of Mr. Goldberg.

Documented RSD is a relatively rare condition. The advanced cases (such as Mr. Goldberg suffers) number in the tens of thousands nationwide. Although exact statistics are not available, an estimated prevalence of documented stage II to III RSD numbers far less than 1 of 1000 in the general population. (References upon request). Extrapolating from that statistic, I would be extremely surprised if there are more than 100 or so inmates with a clear diagnosed RSD II or III in the entire nation. In any specific prison's population, there would probably at most one or two.

When one then considers Mr. Goldberg's additional medical conditions (heart disease, hypertension and recent colon surgery), the viable therapeutic options available to safely treat his complicated mixture of health problems diminishes. The number of prison inmates that would fit his complicated medical profile would be projected to be a few dozen people at most (nationwide). Mr. Goldberg's specific case has already proven difficult to successfully treat (before these internment issues arose). He had seen multiple physicians without relief before he came to see me. As I mentioned, it was serendipity that I managed to find a successful treatment on my first attempt. This is the exception with RSD rather than the rule.

With all deference to the BOP, it is extremely unlikely that they have the requisite experience with the

THE MEDICAL SERVICES BLDG ♦ 4101 NW 4ᵀᴴ Street, Suite 208, Plantation, FL 33317 ♦ 954-587-4300 ♦ Fax 954-587-4018

Mark Goldberg
page 2

uncommon amalgam of problems facing Mr. Goldberg over the next several years. This statement is in no way derogatory; it simply reflects the complexities of his situation. With sub-optimal care, it is medically probable that his condition would exacerbate and then progress. (Studies show that upto 70% of all patients suffer a spread of their pain and autonomic/dystrophic symptoms, especially in more advanced cases). Mr. Goldberg's medical well-being is at risk, and this risk will inevitably and substantially increase if he is imprisoned.

I hope this addendum to my court testimony assists all parties in the difficult decision demanded in this circumstance. I will be happy to provide literature references concerning any of my statements.

Sincerely yours,

*[signature]*

David B. Ross, M.D.
Cc: Mark Goldberg

# DAVID B. ROSS, MD., P.A.

July 10, 2002

Debra J. Stuart
Assistant United States Attorney
Southern District of Florida
505 South Second Street, Suite 200
Fort Pierce, Florida 34950

  Re: U.S. v. Mark Goldberg
   Case No. 00-6270-CR Graham

Dear Ms. Stuart

Mark Goldberg sent me the letter you received from Michael B. Nelson, D.C. and asked me to comment. My thoughts are enclosed herein. Despite Dr. Nelson's obvious and justly derived pride in the Federal Bureau of Prison's (FBOP) medical services, I must disagree with his conclusions regarding Mr. Goldberg. A review of some relevant data will illustrate my concerns.

Dr. Nelson's attachment provides the following data. The FBOP provides medical services of all types for approximately 20,000 of 130,000 inmates nationwide. As mentioned, it routinely provides services to the more common conditions (hypertension, diabetes, thyroid disorders, heart attack, stroke, seizure disorders). I have little doubt that the services for these entities is of an excellent quality. The data however does not apply to the rare condition of RSD and even less so to the specific case of Mr. Goldberg.

Documented RSD is a relatively rare condition. The advanced cases (such as Mr. Goldberg suffers) number in the tens of thousands nationwide. Although exact statistics are not available, an estimated prevalence of documented stage II to III RSD numbers far less than 1 of 1000 in the general population. (References upon request). Extrapolating from that statistic, I would be extremely surprised if there are more than 100 or so inmates with a clear diagnosed RSD II or III in the entire nation. In any specific prison's population, there would probably at most one or two.

When one then considers Mr. Goldberg's additional medical conditions (heart disease, hypertension and recent colon surgery), the viable therapeutic options available to safely treat his complicated mixture of health problems diminishes. The number of prison inmates that would fit his complicated medical profile would be projected to be a few dozen people at most (nationwide). Mr. Goldberg's specific case has already proven difficult to successfully treat (before these internment issue arose). He had seen multiple physicians without relief before he came to see me. As I mentioned, it was serendipity that I managed to find a successful treatment on my first attempt. This is the exception with RSD rather than the rule.

With all deference to the BOP, it is extremely unlikely that they have the requisite experience with the

---

THE MEDICAL SERVICES BLDG ♦ 4101 NW 4TH Street, Suite 208, Plantation, FL 33317 ♦ 954-587-4300 ♦ Fax 954-587-4018

Mark Goldberg
page 2

uncommon amalgam of problems facing Mr. Goldberg over the next several years. This statement is in no way derogatory; it simply reflects the complexities of his situation. With sub-optimal care, it is medically probable that his condition would exacerbate and then progress. (Studies show that upto 70% of all patients suffer a spread of their pain and autonomic/dystrophic symptoms, especially in more advanced cases). Mr. Goldberg's medical well-being is at risk, and this risk will inevitably and substantially increase if he is imprisoned.

I hope this addendum to my court testimony assists all parties in the difficult decision demanded in this circumstance. I will be happy to provide literature references concerning any of my statements.

Sincerely yours,

*[signature]*

David B. Ross, M.D.
Cc: Mark Goldberg